[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, husband and wife, Daniel Giangraves (hereinafter "Daniel") and Theresa Giangraves (hereinafter "Theresa") bring this complaint in two counts, seeking damages from the defendants, Sports Page, Inc., Peter S. Godlewski and Robert Norman, alleging that the plaintiff Daniel was at the defendant Sports Page establishment in an intoxicated condition; the defendant bartender, Norman, sold and served him additional alcoholic beverages, such that when the plaintiff Daniel left the defendant Sports Page establishment, he drove his motor vehicle into a utility pole, causing him to suffer serious injuries to his person and to his motor vehicle; and, as a further result of the defendants' sale and service of alcoholic beverages to Daniel when he was in an intoxicated condition, the plaintiff Theresa Giangraves was damaged through her loss of consortium during Daniel's hospitalization and convalescence.
The defendants deny that they were the cause of the plaintiff Daniel's motor vehicle accident, resulting injuries and damages, and plaintiff Theresa's loss of consortium.
The court, after hearing the parties, their witnesses, examining their evidence and applying the applicable law, finds for all the defendants on both counts of the complaint. CT Page 10938
The factual background, as presented to the court by the plaintiffs, begins at an outing or picnic on the site in Salem. Various family members were there plus non-family guests. For the plaintiffs, it was a Mother's Day outing. They arrived the evening before Mother's Day. The partying began that evening and went on into the early hours of the morning. Alcoholic drinks, beer, wine and liquor were available together with food. The next morning, the drinking continued with both plaintiffs participating in the consumption of the alcoholic drinks. Late in the aftemoon, approximately 4:00 p. m., the plaintiffs decided to go "dirt biking" in Berlin. They took along Steve Kinnear ("Steve") whom they had met that prior evening, and with whom they had been drinking and socializing during the time they were at the outing.
In leaving to go dirt biking, they left in the plaintiff Daniel's truck, with Daniel driving. There was no noticeable effect in his driving ability as a result of all the day's partying according to both Theresa and Steve.
While riding to and upon arriving at the Berlin dirt biking site, the three participants had additional drinks of wine that was brought along. The three dirt bikers participated in this sport for several hours until darkness fell. They then left with the plaintiff Daniel again driving his truck. No unusual or adverse effects on his driving ability were noted by any of the occupants of the truck.
On the ride home, the plaintiffs, husband and wife, argued all the way home. Upon arriving at home, between 9:00 and 10:00 p. m., Daniel went into the house, took a shower, and immediately left the house, driving his truck. When asked by his wife where he was going, he told her and Steve to "bug off'. Shortly thereafter, Theresa, accompanied by Steve, left the house to find Daniel. Theresa believed he would be at the neighborhood bar, i.e., the defendants' premises. They found him there, sitting at the bar with a beer in front of him. Theresa went in, tried to have him leave, created a scene, knocked over his beer, and finally left when the defendant's bartender, Robert Norman, told her not to cause trouble and to leave.
Theresa and Steve, with Theresa driving, went to East Hartford to get her two children at her mother's home. She then returned to the defendant's bar and again tried to have her husband leave. He again refused. She again was told to leave by CT Page 10939 the bartender. Theresa then drove home with Steve and her two children. She put the children to bed and went to sleep on the couch while Steve slept in a chair.
At about 11:45 p. m., the phone rang and Theresa was informed that her husband had been in an accident and was at the Hartford Hospital. She and Steve went to the hospital and discovered that Daniel had incurred serious injuries.
As a result of those injuries, Daniel was hospitalized for primary medical care and then for convalescence and rehabilitation at a special care facility. He then continued the rehabilitation and convalescence at home under care of his wife and as an out-patient of the special care medical facility. During all of this period, Daniel was partially or completely disabled from employment.
The court, in assessing the testimony of the various witnesses, notes that the credibility of the plaintiffs and of Steve Kinnear is suspect. The three spent the full day drinking and partying together, yet they indicated that Daniel showed no adverse effects on his driving when the three left Salem to go dirt biking and later when driving to the plaintiffs' home after dark. Further, in spite of the heavy drinking, they went dirt biking for several hours without difficulty.
In addition, plaintiffs' witness, Teresa Anderson, testified that she was present when the plaintiff Theresa Giangraves came into the defendant bar and knocked over her husband's beer; and that she, Teresa Anderson, also saw Theresa Giangraves make both attempts to have her husband return home. Further, Anderson testified that she spoke with Daniel while he was at the bar, that the second beer was still there before Daniel on the bar and was still there shortly after when she left the bar about 11:00 p. m. In addition, she admitted having a close social relationship with Daniel's family, that she had lived with his brother for several years and that she continued contact with Daniel's family. The only credible evidence presented to the court with regard to the amount of alcoholic beverages served by the defendant bartender, Norman, to Daniel was a beer that was still in front of him when the plaintiff wife first arrived at the bar and knocked it over before leaving the bar, that a second beer was placed before the plaintiff Daniel by the bartender to replace the first beer, that this beer was still there when the witness Anderson spoke with Daniel and continued there when she CT Page 10940 left the bar at approximately 11:00. Further, she admitted having a close social relationship with Daniel's family.
Regarding the extent of Daniel's abuse of alcohol prior to his accident as indicated by testimony of the investigating police officer, Robert Womer, a blood alcohol test taken at the Hartford Hospital gave a reading of .17. An arrest warrant was issued to Daniel for operating a motor vehicle while under the influence of alcohol.
However, the plaintiffs' complaint raises issues requiring proof that the plaintiff Daniel was under the influence of alcohol when he arrived at the defendant bar; there was additional alcoholic beverage consumption by Daniel at the defendant bar; his condition upon leaving the bar and the time of his leaving. Further at issue is whether he did have or could have had other alcoholic drinks after leaving the defendant bar; as well as that the time period between his leaving the bar and the drawing of the blood at the hospital was legally consistent with a showing by the plaintiffs that Daniel was in an intoxicated state at any time from his arrival at the Sports Page to his departure from its premises.
Although the plaintiffs wife and Steve testified as to heavy drinking by both plaintiffs all day, they also testify that food was available all during that time and that the plaintiffs had food as well as drinks; that they did not notice any adverse alcoholic effects on the plaintiff Daniel while driving nor while biking. Also, they themselves were not noticeably affected by the drinking.
Additionally, the plaintiff, Theresa, and Steve testified that wine was available in the truck when the plaintiffs drove to go dirt biking, that drinking occurred during the trip down and while the biking was in progress. Whether Daniel drank any of this wine after leaving the defendant bar was not known since he has a loss of memory concerning that day and evening resulting from his head injury.
Daniel, upon leaving the defendant bar, did not appear to be returning home since the bar and the plaintiffs' home were both in New Britain, while the crash occurred in Newington. Where he was going and why is unknown.
The plaintiffs' complaint alleges that the plaintiff Daniel CT Page 10941 was intoxicated and that this intoxication was overt and visible when he was at the defendant bar. However, immediately prior to his arrival at the bar, he had driven the plaintiff Theresa and Steve from Berlin to the plaintiffs' home in New Britain. Neither Theresa nor Steve testified that Daniel was intoxicated at that time or that his driving was adversely effected by his alcohol consumption. In fact, they had ridden with him from Salem and then spent several hours with him on dirt bikes with no indication that he was intoxicated or that his overt actions were those of an intoxicated man. Nonetheless, they claim in their complaint that his overt condition of intoxication was such that the defendant bartender knew, or should have known, of Daniel's intoxication and should not have served him alcoholic beverages.
In addition, plaintiffs' witness, Teresa Anderson, testified that she was present when the plaintiff Theresa Giangraves came into the defendant bar and knocked over her husband's beer. That she, Teresa Anderson, also saw Theresa Giangraves make both attempts to have her husband return home. However, there was no testimony that Daniel drank any of the first beer served him or the second beer served to replace the one his wife knocked over. Further, she testified that she, Teresa Anderson, spoke with Daniel while he was at the bar and that the second beer was still there before Daniel and was still there shortly after when she left the bar about 11:00 p. m. However, she also testified that she knew that Daniel was intoxicated and should not have been served by the bartender even though Daniel did not display any noticeable signs of intoxication such as slurred speech, unsteadiness and so forth. She claimed she knew when he was intoxicated because of past contacts with him. Although, she also testified, that it was not until the following day when she read the news of Daniel's accident that she was convinced that he had been intoxicated the night before.
The facts presented by the plaintiffs create much certainty as to what actually occurred throughout the course of that day and night. No credible evidence was received by the court as to the critical facts concerning Daniel's degree of intoxication, if any, at the time of his arrival at the defendant bar; the amount of alcoholic beverage consumed by Daniel at the bar, if any, the time he arrived and when he left the bar and his physical condition at those time; whether he had any drinks after leaving the defendant bar; and, the time period between his leaving the bar and the drawing of his blood that was tested by the hospital. CT Page 10942
Because of these uncertainties, the court is unable to find, by a fair preponderance of the evidence, in each of the two counts of the plaintiffs' complaint, that the allegations of these counts were proven.
Therefore, judgment is entered for all defendants on both counts of the complaint, together with court costs.
Kremski, J.T.R.